## WESLEY A. DUDLEY AND MANLEY DUDLEY v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

*Railroad companies—Liability for labor debts—Order by subcontractor on merchant*

1. The true intent and meaning of Act No. 100, Laws of 1871 (How. Stat. §§ 3423, 3424, 3425), is to protect laborers and persons furnishing material for the construction and repairs of railroads, which protection is limited to the amount due from the railroad company to its contractor at the time the bill of items of the labor and material furnished is furnished to the company.

2. The labor covered by the statute applies to *manual* labor of persons employed, and does not extend to teams used upon the work, and the material referred to does not include feed furnished such teams, or clothing or board of the laborers so employed.

3. To warrant a recovery in a suit based on the statute, the plaintiff must allege and prove that the items of labor for which he claims payment were performed by a laborer employed by a contractor with the company, or by a subcontractor, in constructing or repairing the railroad, and that the bill of items of labor and materials sued for has been furnished to the railroad company, together with the amount claimed, prior to its usual pay-day when such claim shall be due, or, if the contractor was not paid on such pay-day, then prior to the payment *then* due to the contractor. He must further show that at the time he furnished said bill of items, or at the pay-day next ensuing, there was an amount due from the company to the contractor, and the amount, and that the claims he seeks to collect are *undisputed*, and acknowledged to be due from the contractor or subcontractor.

4. The claims protected by this statute are assignable, and may be enforced by the assignee in the same manner, and to the same extent, as the assignor could have done.

5. A railroad subcontractor gave to men in his employ orders on a merchant for goods to a fixed amount, who delivered the same, the drawer charging the orders directly to the men as so much money paid them.
   *Held*, not an assignment of the claim of the men for labor

performed for the subcontractor, who treated the orders as payment to the laborer, which, when paid, extinguished the laborer's claim. *Martin v. Michigan & Ohio R. R. Co.*, 62 Mich. 458.

Error to Livingston. (Newton, J.) Argued April 13, 1887. Decided April 28, 1887.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*L. S. Montague*, for appellant.

*Jay Corson*, for plaintiffs.

CHAMPLIN, J. This action was commenced under sections 3423, 3424, and 3425 of Howell's Statutes, being an act passed by the Legislature in 1871, entitled—

" An act to provide for the protection of laborers and persons furnishing material for the construction and repairing of railroads in this State."

The act first makes it lawful for the railroad company, when entering into a contract for work, labor, or materials, to provide in the contract for the payment of laborers and persons furnishing materials to such contractors or subcontractors; and, if no such provision is made in the contract, it is made lawful for the railroad company to withhold payment until such laborers and persons furnishing material are paid. The act then declares that it shall be the duty of such railroad company, by agent or otherwise, at each pay-day on said roads, to see that all laborers and persons furnishing material employed by contractor, contractors, or subcontractors are paid before payment is made to said contractors, not to exceed the amount due from the railroad company to such contractors. The provisions of the act do not apply to any iron or other materials or property used in ironing and equipping the road. It is also subject to this proviso:

"That a bill of items of the material and labor furnished

to said contractor or subcontractors shall be furnished to the company, through their agent or otherwise, together with the amount claimed, prior to the usual pay-day of said company when such claim shall be due; or, in case the contractor or contractors are not then paid, then prior to the payment then due."

Section 3424 reads as follows:

" On compliance with the provisions of section one of this act, the persons performing the labor or furnishing the materials mentioned in said section one shall have the right to collect pay for the same from said railroad companies by action, as in case of other claims against said railroad companies, if the said claim or claims are undisputed, and acknowledged to be due from said contractor or subcontractors."

Section 3425 enacts that—

" If the amount claimed to be due from the contractor or subcontractors is disputed by them, then said company shall withhold the payment from both till the same has been adjudicated, as in other actions, before some court having jurisdiction of the amount in controversy, and judgment duly rendered, when the company shall pay over the amount of the judgment to the party recovering the same against said contractor or subcontractors, provided the amount of said judgment is due to said contractor or contractors from said company; if not, then so much as is due on said contract."

The true intent and object of the act, as expressed in its title, is to protect laborers and persons furnishing material for the construction and repairs of railroads. The extent to which such protection is extended depends upon and is limited to the amount due from the railroad company to its contractor at the time the bill of items of the labor and material furnished is furnished to the company. It is also limited to such labor and material as is performed and used in constructing or repairing the railroad. The labor applies to manual labor of persons employed, and does not extend to teams used upon the work. This is evident from the title, which expresses the object to be to protect laborers. The material referred to is such material as enters into the con-

65 Mich.—42.

struction or repairing of the railroad, and does not apply to material used or supplied for any other purpose. Feed furnished for teams employed in working upon the road, clothing or board of men so employed, would not come within the language or meaning of the act, because such feed, board, and clothing are not used in constructing or repairing the railroad.

To entitle a plaintiff to recover under this act, he must allege and prove that the items for labor payment which he claims for were performed by a laborer employed by a contractor with the company, or by a subcontractor, in the constructing or repairing of the railroad, and the materials for which he claims payment were furnished to a contractor or subcontractor to be used in constructing or repairing the railroad. He must further show that a bill of the items of the labor and material furnished to the contractor or subcontractor has been furnished to the railroad company, together with the amount claimed, prior to the usual pay-day of the company when such claim shall be due; or, if the contractor was not paid on the usual pay-day, then prior to the payment then due to the contractor. He must further show, in order to establish a cause of action, that at the time he furnished the company with a bill of items, or at the pay-day next ensuing, there was an amount due from the company to the contractor, and the amount of such indebtedness.

It is contended by the plaintiffs' attorney that the plaintiff need only show that there was some amount due to the contractor, and that the burden of proof is then cast upon the railroad company to show, as matter of defense, if the amount due was less than the amount claimed by the plaintiff. But this statute, although remedial, is in derogation of the common law, and interferes with, and seriously affects, the contract relations of parties, and must be strictly construed, or at least so construed as not to cast additional burdens upon parties between whom and the plaintiff there is no

privity of contract, unless plainly implied in the language employed. The statute imposes a new duty upon the railroad company, not that it shall pay the claims of laborers and material-men on the failure or neglect of the contractors to do so, but the duty imposed is to retain in its custody the amount due from it to its contractors, not exceeding the amount of the claims furnished, until such contractors or subcontractors pay such claims. It is in effect a garnishment or stop-order of the amount due to the contractor.

No provision is made for voluntary payment by the company to the laborer or material-man, but they are permitted to collect pay for the claim by action against the railroad company. The burden of proof is upon the plaintiff to show that his right to collect such pay exists under the statute; and it is as much incumbent on him to show the amount of the indebtedness of the railroad company to its contractors as it is for a plaintiff to show the amount a garnishee is indebted to the principal defendant. But he must go still further, and show that the claim or claims which he seeks to collect pay for are not only undisputed, but acknowledged to be due from the contractor or subcontractors. This is very important, and lies at the foundation of the right to recover. Evidence that the claims are undisputed, and acknowledged to be due, is the only protection which the company would have against being compelled to pay the amount again to the contractor. The design of the law appears to be to effect a statutory novation of the debt due by the company to the contractor, and make it due and payable to the contractor's creditor. The evidence should be satisfactory upon this point; but the railroad company has it in its power to protect itself by notifying the contractor or subcontractor of the pendency of the suit, and thus give to such contractor the opportunity of showing that the claim is disputed or not acknowledged as being due from him. The claims protected by the statute are assignable, and may be enforced by the assignee in the

same manner, and to the same extent, as the assignor could have done.

The present case shows that the defendant railroad company contracted with W. V. McCracken & Co. to construct and grade a portion of its railroad. McCracken & Co. sublet a portion of the work to McLane & Wilson, and they in turn entered into a subcontract with one Harvey S. Heywood. The plaintiffs were engaged in merchandising, under the name of Dudley Brothers, at Byron. The largest portion of the claim for which a recovery was had in the court below was for the indebtedness of the subcontractor Heywood. Their claims against the railroad company which they hold in their own right are based upon orders drawn by Heywood, a copy of one of which is as follows:

"$2.50.                                    11TH–2–1885.
"*Dudley Bros.:*   Please let C. H. Closman have merchandise to the amount of two dollars and fifty cents. October time.                                    H. S. HEYWOOD."

On orders such as this they delivered to the men presenting them goods from their store amounting to $149.73. Heywood charged the orders directly to the person in whose favor they were drawn as so much paid to him. The question presented is, did these orders, so drawn and received by Dudley Brothers, constitute an assignment of the claim of the laborer for the amount due him for labor from Heywood? We do not discover how it can operate as an assignment of the laborer's claim for labor performed for Heywood. Heywood treated the order as payment to the laborer; and the laborer had no claim against Heywood, after receiving the amount the order called for, either in goods or money. The case cannot be distinguished from *Martin v. Michigan & Ohio R. R. Co.*, 62 Mich. 458.

Plaintiffs are the assignees of 28 other claims. These are mostly based upon orders drawn by Heywood, some in favor of laborers; some in favor of persons who have boarded labor-

ers, for the board of such persons; some for the boarding or keep of teams; some for hay, feed, and other supplies; and some for material. It need not be repeated that nothing but claims for labor and material used in constructing or repairing the railroad are protected by the statute, which excludes a large part of the claims assigned to plaintiffs.

The only evidence offered on the trial to show the amount due from the defendant to its contractor was the testimony of Mr. Corson. He says he presented a list of the claims held by plaintiffs to James M. Ashley, Jr., who was one of the directors, and at that time superintendent or manager of the construction for the railroad company, and told him unless the contractors paid these amounts they should claim the amounts of these claims against the company. He says:

"We talked the matter all over at that time, and he said he would try and have them paid, and thought possible some of them would be paid at that pay-day in December."

This testimony the court thought sufficient to submit to the jury as tending to prove that the company owed its contractors, and from which they must find the amount of such indebtedness was equal to the amount of the plaintiffs' claim. The testimony of Corson neither proved that defendant owed its contractors, nor the amount, if any, of such indebtedness, and the case should have been taken from the jury upon this point, as was requested by defendant's attorney.

The judgment of the circuit court must be reversed, and a new trial ordered.

The other Justices concurred.