BOARD OF EDUCATION OF SALT LAKE CITY *v.* THE SALT LAKE PRESSED BRICK COMPANY, ET AL.

MECHANICS' LIENS—PROPERTY SUBJECT—EQUITABLE ASSIGNMENT.

The board of education of Salt Lake City contracted with W to the effect that he should build a schoolhouse, and W assigned the money which would become due as the building progressed to his sureties, to secure them against possible loss, and for material and money furnished by them in completing the building. Others, who had furnished material, and had filed their claims, as required by the act of, the legislature, to secure liens to mechanics and others, under Laws 1890, p. 24, claimed a share of the funds—$7,026.67—in the hands of the board, and due W under the contract. *Held,* that a mechanic's lien cannot attach under Laws 1890, p. 24, since the house and lands upon which it is sought to attach the lien are de-

voted to a public use; and that the assignment of the money *not yet due, and therefore not yet in existence,* so that a demand could be made for it, is valid in equity.

(No. 640.   Decided March 26, 1896.   44 P. R. 709.)

Appeal from the district court of the Third judicial district, Territory of Utah.   Hon. S. A. Merritt, *Judge.*

The plaintiff entered into a written contract, dated August 1, 1892, with the defendant F. M. Wright, by which the later agreed to erect for it a public school building for $46,500.   Upon the completion of the building by Wright there had been paid by plaintiff on said contract all of the contract price but $7,026.67.   Conflicting claims to this balance or to portions of it were made by the numerous parties defendant, and the board filed its complaint in interpleader to compel them to interplead their several claims to said sum, and paid the same into court to be distributed to the defendants under the decree of the court as their rights should be finally determined.

All of the defendants other than Glen R. Bothwell and R. E. McConaughy, partners (except the contractor Wright), claimed portions of the fund as parties who had furnished material for, or performed work upon, said school building and filed and served notices of their claims of lien under the mechanics' lien law of 1890 (laws of Utah of 1890, chap. XXX, p. 24).

Work on the building was commenced on August 2, 1892, the ground being staked out on that day.   The Utah Stove and Hardware Company, appellant, furnished to Wright at his request for use in the construction of said building its first material on August 1, 1892; it also furnished material on August 4 and 29, and thereafter at various times.   On August 30, 1893, within the time lim-

ited by law it filed its notice of lien, under the provisions of section 10 of said act; and on the same day served a copy of said notice on plaintiff. The balance then and now due it for said materials is $703.09, with interest from said day. The Salt Lake Pressed Brick Company, appellant, furnished its first materials for said building on September 16, 1892, and its last material on February 20, 1893. On January 10, 1893, it filed its notice of intention to claim a lien under the provisions of section 12 of the act, and on January 12, 1893, served a copy thereof on plaintiff. On March 15, 1893, it filed its notice of claim of lien under section 10 of the act, and on the same day served a copy thereof on plaintiff. The balance then and now due it for said materials is $2,666.43, with interest from February 20, 1893.

The defendants Bothwell and McConaughy became sureties with the contractor Wright upon a bond given to plaintiff, in the sum of $23,250, for the performance by Wright of the building contract.

On August 3, 1892, Wright, Bothwell & McConaughy signed a written contract that in consideration of the signing of said bond all the moneys to be received from the plaintiff board "shall be paid to the firm of Bothwell & McConaughy direct by said board, and by them, Bothwell & McConaughy, paid out"; this document also contained an agreement that Wright should buy of said firm all the lumber and mill supplies for said building, and that all sub-contracts for work and material on said building should be "subject to the approval of said Bothwell & McConaughy, and let under their direction and with their consent only."

On the same day Wright signed a document purporting to be an order directed to the plaintiff board directing it to pay to Bothwell & McConaughy "all moneys to be paid upon the contract for said schoolhouse," and purporting

to assign to Bothwell & McConaughy "all moneys to become due under the contract for the erection of said building."

This was filed with the board January 14, 1893. On March 9, 1893, the board passed a resolution that by reason of said assignment and the filing of the same with the board, all payments due and to become due to Wright be paid in accordance with said assignment.

The right of Bothwell & McConaughy to the whole fund in court as against those claiming under the several liens, is predicated upon the assignment of August 3, 1892, by Wright, the contractor, and their payment of said moneys to complete the building. From a decree rendered in favor of Bothwell & Conaughy, certain defendants appeal. *Affirmed.*

*Sutherland & Murphy,* for appellants.

Both appellants were relying implicitly on the moneys to become due from the Board of Education as the assured source of their payment; and neither Bothwell, McConaughy, nor Wright, gave them any notice that the fund on which they were relying had been assigned. Notice of the assignment was not given to the board by Bothwell & McConaughy until January 14, 1893, immediately after the filing and service of the Buck Co.'s notice of lien, January 12.

During all the course of erection of this building up to March, 1893, the warrants of the board were in favor of Wright. It was not until March 15 that Bothwell & McConaughy had any warrant drawn in favor of themselves. (See Board of Education vouchers, Abst. pp. 107 to 116.)

And upon each occasion up to March 15, when Wright obtained the payments from the board, he swore the amount claimed was due to *him.* (See same pp. of Abst.)

All this was done although Wright was financially irresponsible, and Bothwell & McConaughy knew that fact. He had not one dollar to put into the enterprise. (Abst. p. 101.)   The fraud was pleaded by both appellants in their amendments to their answers. (Abst. p. 50 and p. 55.)

*This secrecy was a badge of fraud.*

While it may be true that notice to the debtor is not indispensable in all cases to give validity to an assignment and to give the assignee precedence over creditors of the assignor, it is nevertheless true that the making of such an assignment secretly and keeping it secret for such a period and under such circumstances stamps it as fraudulent.   And it would be fraudulent even if it could be successfully contended that it was made for a valuable consideration. *Blennerhassett* v. *Sherman,* 105 U. S. 100; *Coates* v. *Gerlach,* 44 Penn 43; *Hilliard* v. *Cagle,* 46 Miss. 309; *Gill* v. *Griffith,* 2 Md. Ch. 270; *Hafner* v. *Irwin,* 1 Ired. 490; *Hildeburn* v. *Brown,* 17 B. Monroe, 779; Wait on Fraud. Convey., sec. 235; Burrill on Assignments, sec. 346.

"A deed not at first fraudulent may afterward become so by being concealed or not pursued, by which means creditors are drawn in to lend their money." *Hungerford* v. *Earle,* 2 Vernon 261; *Hildreth* v. *Sands,* 2 Johns. Ch. 35.

In *Hilliard* v. *Cagle, supra,* the court said:

"The natural and logical effect of the agreement and assignment, and the conduct of the parties thereto, was to mislead and deceive the public, and induce credit to be given to the mortgagor, which he could not have obtained if the truth had been known, and therefore the whole scheme was fraudulent as to subsequent creditors, as much so as if it had been contrived from that motive and for that object."

In that case the instrument was held to have been made originally without any fraudulent intent. It was held a fraudulent transaction because the grantor retained possession of the property and withheld the instrument from record.

The transfers and deeds held fraudulent and void in the other cases cited were so held upon the same ground —the holding back of the fact of assignment.

Bothwell & McConaughy by their conduct led the brick company and the hardware company to believe that Wright was the sole owner of the fund and that he had made no assignment or disposition of it which would defeat their claims.

Regarding the appellants and respondents as each *bona fide* assignees of the fund, the latter by act of Wright and the former by operation of the mechanics' lien law, and as standing without any question of statutory preference, the brick company, at least, upon the general principles of equity would be entitled to preference as the diligent party, first in time to perfect its claim by taking the necessary statutory step of filing its notice of lien, giving notice to, and making demand on the board; all of which was done before respondents gave notice of their assignment. *Judson* v. *Corcoran,* 17 How. 612; 2 Leading Cases Eq. p. 51; Pomeroy Eq. sec. 707, p. 158; *Spain* v. *Brent,* 1 Wall. 604.

As assignees of the contract respondents took it with the obligations imposed by it. They cannot claim its benefits and seek to escape its burdens. They must discharge all the obligations which the assignor would have been held to discharge had the assignment not been made. *Knapp* v. *Swaney,* 56 Mich. 345; *Union Pacific R. Co.* v. *Douglass Co. Bank,* 60 N. W. Rep. 886.

Their rights as sureties were the same, and no greater

than the contractors.   And their duties and obligations as sureties were no less than his,

"Where sureties for building contractors assume the contract, they can claim nothing under it which the original contractors could not." Brandt, Suretyship and Guar. sec. 601; *Knapp* v. *Swaney,* 56 Mich. 345.

The principle upon which a municipal corporation, including a board of education, is held to be exempt from garnishment has no application to this case.   It is not contrary to public policy that publc authorities should be compelled to recognize the just claims of those who have furnished labor and materal for their own buildings. The lien claimants are not strangers as in the case of ordinary garnishment.   The statute creates privity between them and the board of education.   If, moreover, as counsel contends, the law through this statute cannot assign the fund, how can the contractor Wright be permitted to assign it?

No greater injury or inconvenience can result to a board of education from an assignment by operation of law than from an assignment by act of a party.

Again, it does not lie in the mouth of Bothwell & Mc-Conaughy to make such an objection, not only for the reason that they themselves claim as assignees of the fund, but for the further reason that the board of education makes no such objection, but on the contrary voluntarily pays the fund into court, and thereby subjects it to all such claims as a court of equity may determine.   As was said in reply to a similar objection made in the case of *The Supt. etc.* v. *Heath,* 15 N. J. L., p. 29:

"Whatever difficulty either at law or in equity this objection might present    *    *    *    *    *    *    it can have no force in the present case.   Here the debtor has come voluntarily into court with the fund and leaves the equitable claims of the contesting parties to

be settled between themselves according to the principles and practice of a court of equity.   It does not lie in the mouth of either of the claimants to raise the objection. The presumption must be that the complainant assented to the assignment of the debt, whatever their original contract may have imported."

The above was a case precisely like the present in which the balance of the contract price for the erection of a public school building was paid into court by the complaining board of education, who filed a bill of interpleader in order that the fund might be distributed among the different classes of contesting material men, and laborers.

We claim that it is established both upon reason and authority that we are entitled to a lien upon this fund.

We further claim that our rights to participate in the fund are to be determined upon the same principles as in the case of a private building our rights would be determined as claimants of a lien upon the premises.

We claim first, that under the authority of *Morrison* v. *Carey-Lombard Lumber Co.*, 9 Utah 70, and *Carey-Lombard Co.* v. *Sheets*, 37 Pac. Rep. 572, our lien relates back to the time when each appellant respectively furnished its first material for this school building.

Under the ruling in the foregoing two cases the proposition is indisputable.

No other stipulation as to costs was made than that found on page 63 of the abstract.

This stipulation was, "that the costs, including the fees of the referee and reporter, be paid *out of the fund,* at the time of signing the findings, and the amount and fact of payment be stated in the decree."

The referee's finding as to what the stipulation was is, "that the referee's fees, reporter's fees and clerk's costs,

should be paid *in the first instance* out of said fund, *and recovered as costs by the prevailing party."*

The italicized portions of this finding originated in the inner consciousness of the referee, and not elsewhere. There is not one syllable on this record to warrant them. They were constructed by the referee out of nothing, and are his own creation, gratuitously interjected by him into his findings in the teeth of an expres stipulation of the parties.

The stipulation was that the costs be paid "out of the fund." This means precisely what it says, and *not* that the costs shall come out of the losing parties. . If counsel had intended what the referee finds, they would have made it clearly appear in their stipulation. They were presumably as capable as the referee of stating their own intentions both clearly and fully.

Aside from the stipulation, the finding and decree as to costs violates Sec. 27 of the mechanics' lien act (laws of 1890, p. 31). This section requires that liability for costs shall be "divided" between the parties and a decree holding each of the unsuccessful parties jointly liable for all the costs with all the others violates it

Upon any view of the matter the decree for costs is grossly erroneous, and warrants a reversal.

*Booth, Lee & Gray,* for respondents.

ZANE, C. J.:

It appears, from the evidence in this record, that the defendant, Francis M. Wright, on the 1st day of August, 1892, made a written contract to erect for the plaintiff a public school building for $46,500, of which $7,026.67 remained unpaid upon its completion. To this remainder the Salt Lake Pressed Brick Company, the Utah Stove and Hardware Company, Bothwell & McConaughy, and

other defendants, who had furnished materials to Wright, which had been used in the erection of the building, or had performed labor for him thereon, respectively made claim. Under these circumstances, the plaintiff filed its interpleader against the defendants, and deposited the amount in dispute with the clerk, and asked the court to require the defendants making the claim to litigate their rights among themselves. To the plaintiff's complaint, various defendants filed answers and cross complaints. On the various issues formed by the pleadings, the court heard evidence, and decreed that the costs should be paid, in the first instance, from the fund in the hands of the clerk; that Mason & Co. should be paid $625, and the remainder should be paid to Bothwell & McConaughy. From this decree, the Salt Lake Pressed Brick Company and the Utah Stove and Hardware Company have appealed.

The evidence in the record sufficiently establishes the respective claims of the appellants as against the contractor, Wright, and that the claims of the appellants were for materials and labor furnished in the erection of the schoolhouse mentioned, and that the claim of Bothwell & McConaughy was for labor and materials, and for money advanced and paid by them for materials and labor upon the order of Wright. We are now called upon to determine the relative rights of the appellants and Bothwell & McConaughy with respect to the fund in dispute. The appellants insist that they acquired a lien on the fund under an act of the legislature to secure liens to mechanics and others. Laws 1890, p. 24. Section 1 of this act provides: "That whoever shall do work or furnish materials by contract, express or implied, with the owner of land, * * * for the construction * * * of any building * * * upon such land, * * * shall have a lien upon such land, build-

ing, * * * or other improvement, for the amount
and value of the work done, or materials so fur-
nished, to the extent of the interest or claim of
such owner thereto, at the time of the commence-
ment to do such work, or to furnish such materials."
Other sections of the act give a prior lien upon the
land and buildings or improvements for work done
or materials furnished under contract with the principal
contractor, or, in other words, it gives such lien to sub-
contractors. The purpose of this law was to secure per-
sons furnishing materials or labor in the erection of
buildings or making improvements, by giving them a lien
on the land, building, and improvements thereon; and the
act provides a remedy by action to enforce the lien. When
the property is not subject to such lien there can be no
action to enforce it. The appellants claim that, by serv-
ing the notice of intention to hold and claim a lien upon
the land and improvements, and by filing it in the office
of the recorder of the county, in pursuance of section 12
of the act, they acquired a lien on the fund in question,
under section 15. Upon serving the notice and filing the
statement mentioned above, section 15 makes it the duty
of the owner to retain in his hands the money due the
subcontractor, and declares that it shall be deemed
enjoined until the right of the party so claiming, if the
same be contested, shall have been legally adjudged, or
until such lien shall have been ended by expira-
tion of time, or shall have been otherwise satisfied.
Unless the notice of intention to claim the lien, and a
statement containing a description of the property upon
which it is claimed, and a statement of indebtedness as
required, are first filed in the recorder's office, the owner
is not required to retain in his hands the money due the
contractor; and when he is required to hold it until the
claim, if contested, is legally adjusted, or the lien is lost

by expiration of time, or until otherwise satisfied, this duty to retain money due the contractor depends upon the right to the lien upon the property. It is not·an independent remedy.

This brings us to the question, had the parties a right to a lien upon this house and land devoted to a public use? If such is the law, such corporations might be deprived of the means essential to the purpose of their creation. While the allowance and enforcement of the lien claimed might not deprive the school board of all the means essential to the education of the children of the city, it might result in much embarrassment to the corporation and to the cause of education. We hold that a mechanic's lien cannot attach to the house and grounds upon which it is claimed, because they were required for public purposes. *Board* v. *Neidenberger*, 78 Ill. 58. The $7,026.67 was due from the board of education to the contractor, Wright; but whether the appellants and Bothwell and McConaughy, having furnished material and labor unde a contract with Wright, or having advanced money upon his request, to pay for such labor and materials, might be substituted, under the circumstances of this case, to the rights of the contractor, or, in other words, whether in equity the doctrine of subrogation may be applied to their claims, and the court might distribute this fund among them pro rata, it is not necessary for us to decide, in view of the effect we are disposed to give to the assignment made by the contractor to Bothwell & McConaughy, bearing date August 3, 1892. The referee found that, at the time of the execution of the contract to erect the building, the contractor, Wright, executed a bond to the board of education in the sum of $23,250, binding him to perform the building contract, and that Bothwell & McConaughy were sureties thereon; and further, "that as a consideration for signing said

bond, and to protect the said Bothwell & McConaughy against loss as sureties on said bond, and to secure the payment to them for lumber and materials to be furnished the said F. M. Wright for said school building, and to secure a repayment to them of any and all sums of money necessary to be advanced the said F. M. Wright by said Bothwell & McConaughy, by reason of having become sureties on said bond, the said F. M. Wright, on or about August 3, 1892, assigned and transferred to said Bothwell & McConaughy, by a written assignment, all moneys to become due him, under his contract with the said board of education, for the erection of the Nineteenth ward schoolhouse on said premises; that said written assignment was filed with the board of education on the 14th day of January, 1893, and was, on or about the 9th day of March, 1893, duly accepted by said board of education, and thereafter all warrants for money were drawn to the order of the said Bothwell & McConaughy by said board of education." The referee further found that Bothwell & McConaughy, in pursuance of a contract with Wright, made on August 2, 1892, furnished to him materials that were used in the construction of the schoolhouse, and for which they have not been paid, amounting to $7,601.95, and that the prices charged therefor were reasonable; that the money paid out by Bothwell & McConaughy, as Wright's bondsmen, in completing the building, and payments guarantied for such labor and materials, amount to the sum of $3,048.50, in addition to the $7,601.95, and above all amounts paid to them. Upon an examination of the evidence, we are disposed to find that the above findings are supported by the weight of the evidence.

The appellants insist that the assignment upon which Bothwell & McConaughy claim their right to the fund in dispute was ineffectual and invalid. The consideration

upon which it was made consisted of the execution of the bond for the faithful performance of the building contract by Wright, the payment to Bothwell & McConaughy for lumber they might sell to Wright, and the repayment to them of all sums necessary to advance to Wright to enable him to complete the building according to his contract. It is apparent that these considerations are valuable and lawful. At the time of the assignment, Wright had not commenced the building, the payment for which was to become due from time to time as its construction progressed, and which he assigned to Bothwell & McConaughy. The claims depended upon the performance of a contract. It is true that the demands assigned did not exist at the time of the assignment. The question is, did the assignment pass the claims as they arose to Bothwell & McConaughy? In equity we think it did. We hold that such an assignment is valid in equity. *Field* v. *City of New York*, 6 N. Y. 179; *Norton* v. *Whitehead*, 84 Cal. 263, 24 Pac. 154; *Hendricks* v. *Robinson*, 2 Johns. Ch. 283. In the case of *Field* v. *City of New York*, one Bell had assigned all bills that might thereafter become due to him, for job printing or stationery, to the amount of $1,500. In its opinion the court said: "There was, indeed, no present, actual, potential existence of the thing to which the assignment or grant related, and therefore it could not and did not operate, *eo instanti*, to pass the claim which was expected thereafter to accrue to Bell against the corporation; but it did, nevertheless, create an equity, which would seize upon those claims as they should arise, and would continue so to operate until the object of the agreement was accomplished. On this principle, an assignment of freight to be earned in future will be held and enforced against the party from whom it becomes due. * * * Whatever doubts may have existed heretofore on this subject, the better opinion, I

think, now is that courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them."

The referee found that the parties stipulated that the referee's fees, reporter's fees, and the clerk's costs should be paid in the first instance out of the fund, and recovered as costs by the prevailing party, and stated, as a conclusion of law, that Bothwell & McConaughy, who recovered the fund, and were entitled to recover their costs against the parties who had answered and filed cross complaints setting up their claims to the fund, and who had offered evidence upon the issues on the trial, and against whom the issues were decided by the court, should pay the costs finally, and the decree was entered accordingly. To that finding, conclusion of law, and decree the appellants excepted, and assigned them as error. The fund—$7,026.67—was not sufficient to pay the claim of Bothwell & McConaughy. They were entitled to the entire fund, and if the costs were paid out of it, they would be decreed to pay the costs, though successful, and the other litigants, though they were defeated, would not. In other words, though they lost their case, they would, in effect, recover their costs against the parties whom the court decided in favor of. Other errors are assigned upon this record which we are of opinion should also be denied. The judgment of the court below is affirmed.

BARTCH and MINER, JJ., concur.