# CHARLESTON.

BERRY *et al. v.* WEST VIRGINIA & P. R. Co.

Submitted February 1, 1898—Decided Apıil 2, 1898.

1. RAILROADS—*Common Carrier—Warehouseman —Liability.*
    A railroad company is still under liability for a reasonable time as a common carrier while the goods are in the warehouse, but after such time it is only under liability as a warehouseman. (p. 539).

2. RAILROADS—*Warehouse—Removal of Goods—Reasonable Time.*
    What is a reasonable time for removal of goods by the consignee from a railroad warehouse is a question of fact, under all the circumstances, for the jury; but, where the facts areclear and undisputed, it is a question of law for the court. (p. 543).

3. RAILROADS—*Common Carrier—Liability—Removal of Goods.*
    A consignee must promptly and diligently remove the goods in a reasonable time after arrival, without regard to distance from the depot, or the means of removal or convenience of the consignee, else the carrier will cease to be further liable as carrier. (p. 541–3).

4. RAILROADS—*Arrival of Goods—Removal of Goods—Notice—Liability—Common Carrier.*
    A railroad company is not required to give notice to consignee of the arrival of the goods, but he must look out for their arrival, and remove them from the warehouse within a reasonable time after arrival, and, if he does not after such time, the company is liable only as warehouseman, not as carrier. The consignee is not entitled to a reasonable time to get knowledge of arrival and another reasonable time for removal. (p. 543).

5. ARRIVAL OF GOODS—*Notice—Agent—Drayman.*
    A drayman authorized to haul a merchant's goods from. the

depot is not, from that consideration merely, an agent whose knowledge of arrival of goods will be notice to the merchant. (p. 544).

6.  COMMON CARRIER—*Bill of Lading—Liability—Negligence.*
     A contract or clause in a bill of lading limiting the liability of a common carrier or exempting it is valid, provided it is based on valuable consideration, and does not so limit or exempt from liability for negligence of the carrier. (p. 545),

7.  RAILROADS—*Warehouse—Arrival of Goods—Agent.*
     Where goods stored in a railroad warehouse are called for by the consignee, and he is informed by an agent that they have not arrived, which prevents their removal, and they are destroyed by the burning of the warehouse, the company is liable. (p. 545).

Error to Circuit Court, Braxton County.

Action by Berry & Son against the West Virginia & Pittsburg Railroad Company. Judgment for plaintiffs in justice court. Trial *de novo* on appeal with the same result, and defendant brings error.

*Affirmed.*

JOHN BRANNON, for plaintiff in error.

W. E. R. BYRNE and H. B. BLACK, for defendants in error.

BRANNON, PRESIDENT:

In an action before a justice in Braxton county, Berry & Son recovered a judgment against the West Virginia & Pittsburg Railroad Company, and on appeal the case was tried by a jury, and the plaintiffs recovered a judgment against the company, which has been brought here by writ of error. The action was to recover damages for the destruction of a roll of carpet in the burning of the company's warehouse at Sutton. As the fire is not to be attributed to the negligence of the company, the question at once arises whether the company is to be judged by the law of common carriers or not, for the law makes a common carrier an insurer of the goods against everything except the act of God, the public enemy, or the conduct of the owner, or from the nature and character of the property (*McGraw* v. *Railroad Co.*, 18 W. Va. 361); whereas a warehouseman, who is a mere bailee, can be made liable

only by proof of his negligence. The question, then, is one which, so far as I know, has never been decided in either of the Virginias, but which has been the subject of elaborate, able, and refined discussions in the great courts of the country, and upon it those courts have widely differed. So close is the question, so well defended has been each side, that it is very difficult to decide which is the more logical view. The question is this: When a railroad company has transported goods from the point of shipment to the point of delivery, and has unloaded them from its cars, and deposited them in its warehouse, is it still, while the goods are in the warehouse, bound by the law applicable to common carriers as it was during the transit, or did its liability under that law cease the moment the goods reached destination, and were removed from the car? I hold that, after the removal from the car, for a reasonable time, the company yet remains bound by the law of common carrier, and after the expiration of such reasonable time it ceases to be bound by that law of bailment. I hold that the court should construe the contract to be one by which the carrier, under the law of carriers, undertakes to carry goods from the point of shipment to the point of destination, and deliver them to the consignee within a reasonable time after arrival, and to preserve them after arrival during that reasonable time in a warehouse after unloading them from the cars, and so preserve them still under the same law of common carrier. So the parties really meant and understood the contract. They did not mean—certainly the shipper did not mean—that between shipment and delivery the relation of the parties should be changed by converting the carrier into a warehouseman. The common sense of the contract makes it one contract under one rule of law, and does not split it into two contracts governed by different principles of law, And with me public policy operates very strongly in solving the vexed question. That policy, for high public purposes of safety to the owners of property passing over the railroads and other means of transportation, exacts the most rigid liability of common carriers, makes them insurers, and courts should be very slow, when they know the necessity of the enforcement of this public pol-

icy, to render decisions abating from the liability imposed upon common carriers by the law. In our days, more than ever before, railroads and other common carriers have become almost a part of the government, as they perform such vastly important public functions in the business of organized society; and, while the courts should do them justice, they should not release them from legal liability upon mere abstract refinements. It is a refinement to say that this company was under the liability of common carrier from Philadelphia to Sutton, but that when it moved this bale of carpet from its cars upon its platform that liability instantly ceased, and it became subject to a lessened degree of legal responsibility. It seems technical and unjust to the shipper unless that shipper delays to call for his goods beyond a reasonable time, and thus becomes, in the eye of the law, himself negligent.

The argument has been made that the shipper should be at the station to receive his goods instantly on arrival, and that the warehouse is made for his benefit to preserve his goods, and not for the benefit of the railroad company, and therefore the shipper should excuse the carrier from the rigid liability of carriers so soon as the goods leave the car doors. But this argument is surely not tenable. The company cannot keep goods in cars, because the cars are needed elsewhere for its business. It cannot conveniently separate and deliver numerous articles piled in the cars as they are called for. It cannot obstruct its tracks with standing cars. Goods must sometimes be kept for weeks before delivery, and other goods must be detained for payment of freight. The warehouse is indispensable to the company for its own necessary purposes, and in no just sense is it maintained for the sole benefit of shippers, so as to enter as an element against them in the question whether as to goods stored in it the carrier is yet a carrier or a warehouseman. Nor can it be a duty of the shipper to be at the depot on arrival of his goods. There is no certainty as to the time of arrival, and this, not from the shipper's fault, but from the fault, if any fault there be, of the company. No schedule of freight trains will afford the shipper any certain guide, as they are so irregular. In long transits, and over connecting lines, the shipper

cannot even guess as to time of arrival. To require him to be at the depot, or suffer for failure to be there, would charge to him the fault of the company in delays. I say that we can draw no logical difference between the warehouse and the car as to the character of the liability of the company. They are both necessary instruments in the performance of the function of transportation and delivery, both of which are duties assumed by the company. I think that the discussion of this subject in the latest and very valuable work on Railroads by Elliott (volume 4, § 1527) is a clear, strong presentation of the subject. He takes the view in result above expressed. Such is the great weight of authority. It is clearly and succinctly stated, also, in 5 Am. & Eng. Enc. Law, 263. See Hutch. Carr. § 367. Thus I conclude that the defendant cannot be relieved from liability on the theory that its liability as common carrier had ceased.

I have stated above that the carrier continues liable as such for a reasonable time after the arrival of the goods. The question what is a reasonable time cannot be definitely fixed by hours. Hutchinson on Carriers, § 377, says that the reasonable time in which to remove the goods will be such as would enable the consignee, if living in the vicinity of the place of delivery, to remove them in the ordinary course and in the usual hours of business, and that this time will not be varied to suit the distance at which the shipper may reside, nor his convenience or means of removal, but he must remove the goods with diligence after he is informed of their arrival, and must provide ample means to do so. This is the case even under the rule that the carrier's liability does not cease until a reasonable time after the arrival of the goods. The duty of the consignee to take the goods away is as imperative as the duty of the carrier to deliver them. He cannot, at his option, continue the stringent liability of the carrier, but must act promptly, and, if he does not, the liability of the carrier as an insurer ends. Of course, I am not to be understood as saying that, after such reasonable time, no liability whatever rests on the railroad company. I mean only that its liability as carrier ends, and that it then becomes liable only as bailee. *Tarbell* v. *Shipping Co.* (N. Y. App.) 17

N. E. 721.   See 5 Am. & Eng. Enc. Law, 270.   What is a reasonable time is largely a question of fact, dependent upon the circumstances, to be decided by the jury.   If the facts are accurate or undisputed, it is a question of law; otherwise it is a jury question.   *Id.*

Is it a duty of the railroad company to give notice of the arrival of goods?   Some authorities say that it is as to persons living in the vicinity of the depot; but the better authorities, and the reason of the matter, declare that it is not incumbent upon the railroad to give such notice.   Why? While the consignee need not be at the depot to take his goods at the moment of arrival, and the law retains the railroad company under the liability as carrier for a reasonable time, yet it does not indefinitely hold it under this high degree of liability, but requires the consignee to keep a lookout for the arrival of his goods by adopting such means as may be expected to inform him of their arrival. No notice from the company is necessary.   *Railroad Co.* v. *Carter*, 165 Ill. 570, (46 N. E. 374); 4 Elliott, R. R. § 1527; Ror. R. R. 1289; 2 Redf. R. R. § 175, point 4.   *Railroad Co.* v. *Morehead*, 5 W. Va. 293, seems to hold that notice is necessary, but it seems against the better authorities, and based on exceptional circumstances on account of inability to deliver at the point of destination.   I remark that the provisions of Code, p. 550, refer not to notice of arrival of goods, but that notice which is requisite to enable a railroad company, after the lapse of twenty-four hours from the arrival of the goods, to charge storage therefor.   The consignee is not entitled to a reasonable time to obtain knowledge of arrival of the goods, and then another reasonable time to remove the goods.   If we hold that the carrier is under obligation to give notice, then the consignee would have a reasonable time after notice to remove the goods; but if we hold, in the absence of usage, that it is not necessary that the railroad should give notice of arrival, it follows that the consignee has a reasonable time after arrival in which to remove the goods.   The goods arrived about 5 o'clock p. m. on the 9th of April, and were burned on the 10th.   The jury found that a reasonable time had not elapsed after arrival in which the goods should have been taken away in this instance, so far as its

verdict is based upon that question, and I cannot say that the time was beyond a reasonable time. In my view, if that time was a reasonable time, it is not material when within that time the plaintiffs knew of the arrival of the goods, because the entire time is not longer than a reasonable time. We would infer from some books that the consignee has a reasonable time after notice, but I hold that the reasonable time commences from arrival. Where the party is present on the arrival, or gets early notice of arrival, that fact enters as an important element in the decision of what is a reasonable time for removal, as, having notice, he should proceed promptly to consummate the removal; but he has a reasonable time, notice or no notice, after arrival of the goods to effect their removal.

There is controversy in this case as to notice to the plaintiff of the arrival of the goods, and that involves a question of some importance. A drayman, who was in the habit of hauling goods for the plaintiffs, who were merchants doing business at Sutton, knew distinctly of the arrival of this carpet on the evening of the 9th of April, but, as it was raining, declined to take it; and the question comes up whether notice to him is notice to the plaintiffs. I hold that it is not. It would be going very far to say that a drayman, who was authorized merely to haul goods from the depot to the store, is an agent vested with the authority to receive notice to affect his employer, and change that employer's relation to the carrier as to the extent of the carrier's responsibility. Never did the merchant intend to constitute him an agent for such serious purpose. "The authority, if it existed at all, must find its source in the intention of the principal, whether expressed or implied. If that intention cannot be shown, the authority cannot exist." Mechem. Ag. 177. Such an agency is not to be so lightly created. Under the finding of the jury there can be no other notice considered than that received by the plaintiffs about 5 o'clock of April 10th,—only an hour before the closing of the warehouse,— and that did not convict the plaintiffs of any want of reasonable diligence in removing the goods.

The defendant claims exemption by reason of a clause found in the bill of lading providing that the company should not be liable for any loss or damage to the carpet

by fire and other specified causes beyond its control.   It is claimed that this can have no effect contrary to the law.  Such special provisions cannot excuse a common carrier from negligence.   No stipulation can excuse it from liability for negligence, because it would relax the dilligence and obligations of common carriers to the injury of the public, and would be against public policy.   5 Am. & Eng. Enc. Law, 288.   This Court has not denied the validity of the contracts of common carriers limiting their liability, but it has held that they cannot exempt from negligence of the carrier.  *Zouch* v. *Railway Co.*, 36 W. Va. 524, (15 S. E. 185); *Brown* v. *Express Co.*, 15 W. Va. 812; *Maslin* v. *Railroad Co.*, 14 W. Va. 180.   But those cases explicitly state that there must be a valuable consideration for such special contracts, and such I understand to be the general law. 5 Am. & Eng. Enc. Law, 298.   It does not appear that there was any consideration for the exemption here claimed, by way of reduced freight or otherwise, so as to make said contract work any result in this case.

But there is one fact in this case which must decide it against the railroad company, regardless of when its liability as carrier ceased, and regardless of notice or diligence on the part of the plaintiffs, for a drayman called for this carpet on the evening before its destruction by fire, and was told by an assistant agent at the warehouse that the carpet had not arrived.  But for this fact, it would have been removed and saved.   The law seems to be very well settled that misinformation given by the railroad company or its agents to the consignee as to the arrival of the goods will bind the company, even though we regard it as only resting under the liability of warehousemen, when such information prevents the removal of the goods.   4 Elliott, R. R. § 1463; 5. Am. & Eng. Enc. Law, 275; 275; 2 Redf. R. R. § 175, point 10; *Railroad Co.* v. *Cotton*, 95 Am. Dec. 656.

There is no sign of a plea in this case, and we might raise the question whether the defendant is entitled to have the points made by him considered, as we might say that it is a mere inquiry of damages by a jury in the absence of a plea.   These facts lead us to the affirmance of the judgment.                              *Affirmed.*