## VAN DYKE'S FOOD STORE v. INDEPENDENT COAL & COKE CO.

No. 5363. Decided July 16, 1934. (34 P. [2d] 706.)

M. E. *Wilson,* of Salt Lake City, and *Marl D. Gibson,* of Price, for appellant.

O. K. *Clay,* of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

In this action plaintiff secured a judgment against the defendant for the sum of $291.65, together with interest and costs. Defendant appeals. By its assignment of errors appellant attacks the judgment: (1) Because its demurrer to the complaint was overruled; (2) because of the claimed improper admission of evidence: and (3) because the evi-

dence does not support certain of the findings of fact made by the trial court.

It is in substance alleged in the complaint that one J. J. Hardy entered into a contract with defendant to sell and deliver to it a number of mine ties at an agreed price, and that pursuant to such contract Hardy delivered to defendant 1,375 ties at the agreed price of $293.30; that prior to the delivery of any of the ties Hardy assigned all money to be paid therefor to plaintiff, and the assignment of such money was accepted by defendant; that, as the ties were delivered, defendant issued to Hardy credit memorandums crediting plaintiff with the proceeds of the ties; that Hardy used the credit memorandums so issued to him for the purpose of securing credit for groceries and supplies purchased from plaintiff; that, in reliance upon such credit memorandums so issued to Hardy by defendant, plaintiff sold and delivered to Hardy goods, wares, and merchandise of the value of $293.30, but defendant has failed and refused to pay the same.

The demurrer was upon the grounds that the complaint was uncertain in that it could not be determined whether the action was founded upon the alleged assignment of the money owing upon the contract or because the defendant misled and deceived the plaintiff by the issuance of the credit memorandums, and upon the further ground that it could not be determined what was meant by credit memorandums. There is merit to both grounds of the demurrer. However, the cause was apparently tried on the theory of the alleged assignment, and therefore no prejudice resulted to the defendant by the overruling of the demurrer. The allegations concerning defendant's issuing credit memorandums to Hardy and the use he made thereof may be regarded as mere surplusage. The allegations with respect to the making of the assignment of the money owing Hardy by defendant and defendant's acceptance of such assignment admittedly state a cause of action.

After the demurrer was overruled, defendant answered.

In its answer defendant admitted that Hardy sold and delivered to it ties of the value of $291.65, alleged that it had fully paid Hardy for the ties, and denied generally the other allegations of the complaint.

The evidence, without conflict, establishes the following facts: Plaintiff, a Utah corporation, operated a branch store at Price, Carbon county, Utah. Defendant, a Wyoming corporation, operated a coal mine at Kenilworth, Carbon county, Utah. Between October 1 and November 12, 1931, both dates inclusive, J. J. Hardy sold and delivered to defendant 1,369 hewed mine ties at the agreed price of $291.65. Defendant paid Hardy in full for the ties on December 4, 1931. The ties were delivered to defendant pursuant to an oral agreement had been Hardy and William Woodhead, manager of the defendant company mine at Kenilworth, Utah. The ties were delivered to Frank G. Young, who was the material clerk for the defendant company at Kenilworth, Utah. As material clerk, Mr. Young's duties were to receive and disburse materials and to keep a record of all materials received and disbursed by him. He it was who received the ties which Hardy delivered to the defendant. As the ties were delivered, Young issued Hardy receipts, or what plaintiff calls credit memorandums. Hardy delivered the ties at eight separate times. A separate receipt was given for each lot of ties delivered. The first receipt reads as follows:

"Rec. from J. J. Hardy credit to Van Dykes Food Stores, Price, Utah

"32—6" X 6"—6' Ties                        "10-1-31.
"88—5" X 5"—5' 4" Ties

                   "Ind. Coal & Coke Co.
                         "F. G. Young."

The other receipts were of the same import except as to the number and size of the ties. Apparently, after the receipts or credit memorandums were issued by Young, the amount that the defendant was to pay for each lot of ties was written thereon by some one other than Young. When the first load of ties was delivered, Mr. Hardy asked Mr.

Young to write on the receipts the words "credit to Van Dyke's Food Stores, Price, Utah." The request was made, according to Hardy's testimony, so that he could show the Van Dyke's Food Stores that he was delivering ties to the defendant. Mr. Young complied with the request. At about the time Hardy entered into the contract with defendant for the sale and delivery of the mine ties, he made arrangements with the plaintiff whereby plaintiff agreed to extend Hardy credit at plaintiff's store for supplies which Hardy and his men would require while getting out the ties. When the receipts or credit memorandum slips were delivered to Hardy, he in turn delivered them to plaintiff. Thereupon plaintiff gave Hardy credit for the amount called for by the credit slips, and permitted him to draw against such credit slips merchandise and in some instances cash. Hardy received from plaintiff the merchandise and cash sued for in this action in the total amount of $293.30. R. S. Dawson, a witness called by plaintiff, testified that he was the manager of plaintiff's store at Price, Utah; that prior to October 1, 1931, he had a transaction with Mr. Hardy whereby it was agreed: That Hardy should be permitted to draw merchandise at plaintiff's store, provided he gave to plaintiff as security therefor receipt slips of the defendant; that such credit slips should be signed by defendant and drawn in favor of, or credited to, plaintiff; that the check in payment of the mine ties was to be payable to plaintiff; that from time to time Hardy delivered credit slips, eight in number, to plaintiff; and that in reliance solely upon such credit slips plaintiff delivered to Hardy the merchandise and cash sued for in this action. The credit slips were received in evidence over timely objection and exception by defendant. The so-called credit slips so received in evidence are what we have heretofore referred to in this opinion as receipts or credit memorandums. Mr. Dawson further testified that on about November 8, 1931, he went to the supply house of the defendant and there checked off the credit slips with Mr. Young; that Mr. Young gave him a statement which showed

that the total amount owing by defendant for the ties which Mr. Hardy had delivered was $291.65; that he observed that there was a discrepancy between the amount that Mr. Young said was owing for ties and the amount shown by credit slips which Hardy gave to plaintiff, but that he said nothing to Mr. Young about such discrepancy; that, so far as he recalled, he was not at the company's office at any time other than the latter part of November when he checked over the figures with Mr. Young; that he did not see manager Woodhead or any of the other people in the office.

Mr. Young, a witness called by defendant, testified that neither Mr. Hardy nor any of the officers or agents of the plaintiff company ever informed him that Hardy had made an assignment to the plaintiff of the money which defendant was owing Hardy for ties. The testimony of Mr. Hardy is to the effect that he did not at any time assign the money owing for the ties to the plaintiff. Mr. Young also testified that he met Mr. Dawson, manager of plaintiff company, on two occasions; that a few days after Hardy delivered to defendant the first ties he (Young) told Mr. Hardy that check for the ties would be made out to Hardy, and Mr. Dawson replied that it was all right to make the check to Hardy, and that he would do his business through Hardy; that neither Mr. Dawson nor Mr. Hardy requested that the check for the ties be made out to Mr. Dawson or to the plaintiff company. Mr. Young further testified that he again saw Mr. Dawson in the middle part of November; that at that time Mr. Dawson asked Mr. Young how many ties Hardy had delivered in November; that Mr. Dawson said nothing about Hardy having assigned the money owing for the ties to the plaintiff. Mr. Woodhead, a witness called by the defendant, testified that the sole duty of Mr. Young as an employee of the defendant was to receive and disburse materials for the company; that Mr. Young was without authority to bind the defendant on any contract; that all contracts made by the company were made by or approved by him (Woodhead) as manager.

The foregoing is a brief summary of the evidence bearing upon the questions which divide the parties on this appeal. Appellant complains because the trial court admitted in evidence the receipts or credit slips which were issued by Young to Hardy. Such receipts were properly received in evidence as bearing upon the number of ties that Hardy delivered to defendant. It being Young's duty to receive material for the defendant company, he had implied authority to issue receipts therefor.

Appellant claims that the evidence fails to show an assignment by Hardy to plaintiff of the money which was owing for the ties delivered to defendant. It will be noted that, at the time Dawson testified that Hardy made arrangements for credit at plaintiff's store, no ties had been delivered to the defendant. Because of that fact, it is urged that Hardy had nothing to assign except a mere possibility; that an attempt to assign that which has no existence either substantial or incipient is a nullity and passes no right or title to the assignee. In support of that doctrine, the following authorities are cited: 5 Ency. L. & P. 901; *Lehigh Valley R. Co.* v. *Woodring,* 116 Pa. 513, 9. A. 58; *Board of Education* v. *Pressed Brick Co.,* 13 Utah 211, 44 P. 709; *Hart* v. *Gregg,* 32 Ohio St. 502; *Donovan* v. *Middlebrook,* 95 App. Div. 365, 88 N. Y. S. 607; 5 C. J. 899, 900, 909, 914; *Smedley* v. *Speckman* (C. C. A.) 157 F. 815; *Christmas* v. *Russell,* 14 Wall. 69, 20 L. Ed. 762; *Farmers' Bank* v. *Blount* (C. C. A.) 8 F. (2d) 443; *Farmers' Bank* v. *Hayes* (C. C. A.) 53 Fed. (2d) 34; *Beecher* v. *Dacey,* 45 Mich, 92, 7 N. W. 689; *Martin* v. *Michigan R. R. Co.,* 62 Mich. 458, 29 N. W. 40; *Dudley* v. *R. R. Co.,* 65 Mich. 655, 32 N. W. 884; *Commercial National Bank* v. *City of Portland,* 37 Or. 33, 54 P. 814, 60 P. 563.

The doctrine announced in many of the foregoing cases would be applicable to the case in hand if plaintiff had had no transaction with Hardy other than the arrangement which Mr. Dawson testified was made at the time Hardy

first arranged for credit at plaintiff's store. In this case, however, other transactions were had between Hardy and plaintiff after the defendant became indebted to Hardy. As receipts or credit slips were given to Hardy for ties delivered, he delivered such receipts or credit slips to plaintiff, and was given credit on the books of the plaintiff company for the value of the ties enumerated on the receipts or credit slips. In light of such an agreement as Mr. Dawson testified to having been entered into between plaintiff and Hardy, and the further fact that from time to time Hardy delivered the receipts and credit slips to plaintiff and received credit therefor, the trial court was justified in reaching the conclusion that, when Hardy delivered the receipts or credit slips to plaintiff, it was the intention and the implied agreement of both Hardy and plaintiff that thereby Hardy surrendered all control of the money owing for the ties and that the absolute ownership thereof vested in plaintiff. There is sufficient evidence to support the finding of the trial court that Hardy assigned the claim in question to plaintiff.

It remains to be determined whether there is evidence which shows, or tends to show, that defendant accepted the assignment or was notified thereof so as to be bound thereby. It will be noted that Young testified that Dawson was told that the check for the ties would be delivered to Hardy, and that Dawson replied that such an arrangement was satisfactory, and that he (Dawson) would do his business with Hardy. That testimony stands uncontradicted. There is nothing in the record which tends to impeach Mr. Young. It is urged on behalf of plaintiff that the testimony of Mr. Young is in conflict with that of Mr. Dawson in this: Mr. Young testified that he had two conversations with Mr. Dawson, one soon after Hardy delivered the first ties and the other about the middle of November, and that it was at the time of the first conversation that it was agreed and understood between him and Dawson that the check for the ties should be delivered to Hardy,

while Mr. Dawson testified that he did not recall having had but one conversation with Young. If the conversation testified to by Young was had on either of the occasions in question, it is fatal to plaintiff's cause. Moreover, so far as appears, defendant was never notified that plaintiff claimed it held an assignment from Hardy until after Hardy had been paid in full for the ties. It is elementary that, in the absence of such notice, defendant is not liable to plaintiff. Both Mr. Young and Mr. Hardy testified that the words "to the credit of the Van Dykes Food Stores" was written on the receipts at the request of Hardy merely for the purpose of showing plaintiff that Hardy was delivering mine ties to defendant, that nothing was said to Young about an assignment having been made or that an assignment would be made to plaintiff of the money to be paid for the ties. Nor may it be said that notice of an assignment given to Young was notice to the company. The sole duty of Young was, according to the evidence, to receive and disburse materials and keep a record thereof. He had nothing to do with the payment of money for material sold to defendant. He was without authority to accept an assignment for and on behalf of the company. Notice to him of an assignment was not notice to the defendant. 2 Mechem on Agency, § 1834; *Hunter* v. *Hunter,* 327 Mo. 817, 39 S. W. (2d) 359; *Hickman* v. *Green,* 123 Mo. 165, 22 S. W. 455, 27 S. W. 440, 29 L. R. A. 39; 2 Pomeroy's Equity Jurisprudence, § 688; *Berry* v. *West Va. R. R. Co.,* 44 W. Va. 538, 30 S. E. 143, 67 Am. St. Rep. 781; *Neal* v. *Smith,* 116 F. 20; *Independent Oil & Gas Co.* v. *Shelton,* 79 Utah 384, 6 P. (2d) 1027. For the reasons stated, the judgment should be, and the same accordingly is, reversed.

This cause is remanded to the District Court of Carbon county, with directions to grant a new trial. Appellant is awarded its costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.