INDEPENDENT OIL & GAS CO. v. SHELTON et al.

No. 5170. Decided January 21, 1932. (6 Pac. [2d] 1027.)
Rehearing denied July 22, 1932.

C. D. *Moore* and *Fabian & Glendenin,* all of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This is a suit in equity whereby plaintiff seeks the following relief: (1) The reformation of a mortgage so that it will include additional land, and (2) an injunction restraining and enjoining the defendants and each of them, their associates, agents, servants, and employees, from handling, selling, distributing, or giving away any gasoline, kerosene, grease, oil, or other petroleum products, other than those furnished by the plaintiff, upon the premises described in the mortgage and the land which the mortgage will cover if it be reformed as prayed. The defendant Shell Oil Company claims that it is the owner of the premises covered by plaintiff's mortgage free from the covenants contained in the mortgage. The court below found the issues raised by the

pleadings in favor of the defendants, and entered judgment accordingly. Plaintiff appeals. It attacks various of the findings of fact made by the trial court upon the ground that such findings are not supported by, but are contrary to, the evidence. There is no substantial conflict in the evidence. The facts out of which this controversy arose are as follows: Plaintiff and defendant Shell Oil Company are, and at all times mentioned in the complaint have been corporations engaged in the business of vending gasoline, kerosene, oil, grease, and other petroleum products at various places within this state. For more than five years prior to the transactions which led up to this litigation the defendant C. A. Shelton had been in the employ of the plaintiff at Marysvale, Utah. During the month of August, 1929, while John E. Cronin, the general manager of the plaintiff corporation, was in Southern Utah, rumor came to him that the defendant C. A. Shelton was about to enter into a contract of employment with the defendant Shell Oil Company. Mr. Cronin sought out Mr. Shelton and inquired from him if the rumors were true. In answer to the inquiry, Mr. Shelton stated that the Shell Oil Company had promised to advance him money with which to build a service station at Marysvale, Piute County, Utah, but that he had not signed up with the Shell Oil Company. Mr. Shelton further stated that he held an option from the Richfield Commercial & Savings Bank for the purchase of a corner lot in the town of Marysvale, that the option would soon expire, and that he was in need of money with which to purchase the property. Thereupon Mr. Cronin promised Mr. Shelton that the plaintiff would enter into the same kind of a contract with him as that offered by the Shell Oil Company. Negotiations continued between Mr. Shelton and Mr. Cronin which resulted in the plaintiff loaning to Mr. Shelton the sum of $3,500. Mr. Shelton purchased the tract of land upon which he held the option from the Richfield Commercial & Savings Bank. It was conveyed to him by a deed dated August 15, 1929. The deed of conveyance was recorded in the office of the county re-

corder of Piute county, Utah, on August 19, 1929. On August 14, 1929, Mr. Shelton and his wife, the defendant Ada Shelton, executed a note in favor of the plaintiff for the sum of $3,500. As security for the payment of the note, Mr. and Mrs. Shelton executed a mortgage in favor of the plaintiff for a like amount upon the property at Marysvale which Mr. Shelton purchased. The mortgage bears date August 14, 1929. It was recorded in the office of the county recorder of Piute county, Utah, on September 14, 1929. The note which Mr. and Mrs. Shelton executed in favor of the plaintiff was made payable in monthly installments of $75 or more beginning on September 15, 1929. The mortgage which was given to secure the note contained these provisions:

"The mortgagors further agree that they will not handle, sell, distribute or give away upon said premises during the existence of this mortgage and until the same shall have been paid in full and in no event for a period of time less than five (5) years from date hereof, any gasoline, kerosene, grease, oil or other petroleum product of any kind whatsoever, except such of said articles of merchandise as they or either of them or their successors or assigns may purchase from the mortgagee, it being expressly understood and agreed by the parties hereto that the vending by the mortgagors and/or their successors in interest upon the premises herein described of gasoline, oil and grease and other petroleum products sold by the mortgagee, is the principal consideration for the loan evidenced by the note hereby secured, and this covenant running with said land, and the said mortgagors agree to purchase from the mortgagee such of said articles of merchandise as shall be handled, sold or distributed by them on said premises during the time herein provided for. The mortgagee, on its part, agrees to sell to the mortgagors at its customary prices for cash or upon such terms in respect of credit therefor as may hereinafter be approved by the mortgagee such oil, grease, gasoline and other petroleum products of the brands and kinds ordinarily carried or sold by it as the mortgagors may require for sale, delivery, or distribution on said property."

Some time in July, 1929, the defendant C. A. Shelton began negotiations with the defendant Shell Oil Company with the end in view of securing money from that company with which to purchase the land upon which he held an option and to erect thereon a service station. He as-

signed his option from the Richfield Commercial & Savings Bank for the purchase of the land at Marysvale to the Shell Oil Company. Under date of July 25, 1929, John Lauder, vice president of the Shell Oil Company, acknowledged, before a notary public of San Francisco, Cal., the execution for and in behalf of the Shell Oil Company, of a contract whereby the company agreed to sell to C. A. Shelton the land described in the option which it held for the purchase of the land at Marysvale. The contract so executed by the Shell Oil Company was also signed by the defendant C. A. Shelton, but the record is not clear as to the date when Mr. Shelton signed the instrument. The contract between the Shell Oil Company and Mr. Shelton for the sale and purchase of the Marysvale property did not become binding upon the parties until September 3, 1929. In the meantime, the Shell Oil Company applied to the Intermountain Title & Guaranty Company for insurance of the title to the property. On August 24, 1929, the Shell Oil Company authorized the Intermountain Title & Guaranty Company to deliver a check in the sum of $4,500 to Mr. Shelton upon Mr. Shelton and his wife conveying the Marysvale property to the Shell Oil Company. On September 3, 1929, the defendants C. A. Shelton and Ada Shelton, his wife, conveyed by warranty deed the Marysvale property to the Shell Oil Company. At the same time the check of the Shell Oil Company for $4,500 was delivered to C. A. Shelton, and the contract whereby the Shell Oil Company agreed to sell, and C. A. Shelton agreed to buy, the Marysvale property was delivered to Mr. Shelton. The deed from Mr. and Mrs. Shelton to the Shell Oil Company was recorded in the office of the county recorder of Piute county, Utah, on September 9, 1929. The contract for the sale and purchase of the Marysvale property contained these provisions:

"The purchaser covenants and agrees that at all times during the term of this agreement, he will conduct and maintain on the premises

herein described, an automobile supply and service station and shall use, dispense, handle, sell and keep for sale, petroleum products, inculding gasoline and lubricating oils supplied by and acquired from the vendor exclusively. The price which the purchaser shall be required to pay to the vendor for all gasoline acquired from the vendor for resale from the premises herein described shall not exceed vendors tank wagon price for commercial gasoline on the date of sale at vendor's depot maintained and operated at Salt Lake City, Utah, as determined and posted thereat by the vendor including the Utah State Motor Vehicle Fuel Tax. Commercial gasoline shall not be deemed to be any special product or gasoline compounded with non-hydrocarbon substances. The purchaser shall not at any time, exhibit or display on the premises herein described or in close proximity thereto, any sign fixing or advertising the price of and/or offering gasoline for sale and shall not sell gasoline therefrom at a price less than the retail market price of commercial gasoline as posted at vendors aforesaid depot at Salt Lake City, Utah on even date therewith. The performance of the foregoing covenants and agreements on the part of the purchaser is a condition precedent whereon depends the performance of the agreements on the part of the vendor. In the event of the failure by the purchaser to comply with said covenants and agreements or any part thereof, the vendor shall be released from all obligations in law or in equity to convey the property herein described or any portion thereof, and the purchaser shall forfeit all rights under this agreement and all monies theretofore paid by the purchaser shall belong to the vendor free and clear of any claim therto by the purchaser as compensation for the use and occupation by the purchaser of the lands and premises herein described."

Immediately after Mr. Shelton received the check for $4,500 from the Shell Oil Company, he paid off the amount owing upon the $3,500 note and mortgage which he and his wife had theretofore executed and delivered to the plaintiff. During the time the negotiations were being carried on between Mr. Shelton and the Independent Gas & Oil Company and between Mr. Shelton and the Shell Oil Company, it was believed by all of the parties to those transactions that the real property concerning which the transactions were had was a corner lot abutting Bullion avenue on the south and the new state highway on the east. Soon after the transactions were completed, it was discovered that the property

did not abut on the new state highway, but, on the contrary, a strip of land twenty feet wide lay between the property purchased from the Richfield Commercial & Savings Bank and the new state highway. On November 30, 1929, Mr. Shelton purchased this strip of land from Leonard E. Stark, and received a conveyance therefor. The deed of conveyance was recorded in the office of the county recorder of Piute county, Utah, on December 2, 1929. Mr. Shelton and his wife conveyed the strip of land to the Shell Oil Company. The deed of conveyance to the Shell Oil Company was recorded in the office of the county recorder of Piute county, Utah, on February 20, 1930. The strip of land so purchased by Mr. Shelton and conveyed by him to the Shell Oil Company was not properly described in the original deed of conveyance, but later other deeds were executed to correct the errors. It is this strip of land that plaintiff seeks to have included within its mortgage by the reformation of the mortgage. Prior to November 15, 1929, Mr. Shelton erected a service station upon the Marysvale property. Part of the service station so constructed is upon the property which Mr. Shelton purchased from the Richfield Commercial & Savings Bank, and part of the station is upon the property which he purchased from Leonard E. Stark. Since the service station has been constructed, Mr. Shelton has handled exclusively the products of the Shell Oil Company. The defendant Leonard Shelton claims no interest in the property here in controversy. For a time he was employed by defendant C. A. Shelton at the Marysvale service station. The only interest the defendant Ada Shelton has in the property is such as she holds by reason of being the wife of C. A. Shelton. Such other facts appearing in the record as we deem necessary to a decision of the question which divides the parties will be noted later in the opinion.

Plaintiff contends that it is entitled to have its mortgage so reformed as to include the strip of land which Mr. Shelton purchased from Mr. Stark because of the mutual mistake and belief of Mr. Shelton and the plaintiff that plain-

tiff's mortgage covered such strip of land. Plaintiff further contends that it is entitled to an injunction restraining and enjoining the defendants from disposing of any petroleum products, other than those furnished by the plaintiff, upon the premises here in controversy. Defendant Shell Oil Company contends to the contrary.

Counsel for the respective parties have filed able and elaborate briefs dealing with the question of whether or not covenants, such as those we have heretofore quoted from plaintiff's mortgage, run with the land so as to bind the successors in title of C. A. Shelton, the covenantor. Counsel for appellant contends that plaintiff is entitled to the benefit of the covenants contained in its mortgage restricting the use of the mortgaged premises, notwithstanding the note secured by the mortgage has been fully paid, and notwithstanding title has passed from the defendant Shelton to the defendant Shell Oil Company. Counsel for the respondents contend that, when the plaintiff was paid the amount owing upon the note and mortgage, the covenants in the mortgage restricting the use of the mortgaged premises became unenforceable, especially against the Shell Oil Company. In the view we take of the facts disclosed by the record brought here for review and the law applicable to such facts, we deem it unnecessary to pass upon the legal effect of the covenants contained in plaintiff's mortgage whereby Mr. Shelton agreed not to sell upon the mortgaged premises any petroleum products other than those furnished by plaintiff. It is conceded by plaintiff, as well it may be, that the covenants with respect to the sale of petroleum products upon the mortgaged premises cannot be binding upon a purchaser of the premises who has neither actual nor constructive knowledge of the mortgage. Plaintiff urges, however, that the Shell Oil Company had knowledge of plaintiff's mortgage and of the covenants therein contained at the time it purchased the premises from Mr. Shelton. One of the findings made by the trial court reads as follows:

" * * * That at the time said warranty deed (the deed from Shelton to the Shell Oil Company dated September 3, 1929) was delivered to the Shell Oil Company it knew of the existence of plaintiff's mortgage hereinabove referred to but did not know that said mortgage contained the covenant above mentioned restricting the use of said premises; that said defendants did not execute or deliver said deed or enter into said agreement for the purpose of avoiding or circumventing the covenants contained in plaintiff's mortgage, nor were either of said transactions entered into in pursuance of any conspiracy between the defendant C. A. Shelton and the defendant Shell Oil Company; that at the time said mortgage was delivered to the plaintiff it knew of the agreement between the said Shell Oil Company and the defendant C. A. Shelton relating to the purchase of said property."

Appellant attacks, in three of its assignments of error, all of the findings just quoted excepting that part wherein the court found "that at the time said warranty deed was delivered to the Shell Oil Company it knew of the existence of plaintiff's mortgage hereinabove referred to." It is urged on behalf of the appellant that the finding that the Shell Oil Company 'had no knowledge of the covenants contained in plaintiff's mortgage is not supported by, but is contrary to, the evidence. It is also urged on behalf of the appellant that, the court having found "that at the time said warranty deed was delivered to the Shell Oil Company it knew of the existence of plainltiff's mortgage," it must follow as a matter of law that the Shell Oil Company knew or is charged with knowledge "that the mortgage contained the covenants * * * restricting the use of said premises." In support of the latter contention, the following cases are cited: *Gordon-Sewall & Co.* v. *Walker* (Tex. Civ. App.) 258 S. W. 233; *Inter-State Bldg. & Loan Ass'n* v. *Ayers*, 177 Ill. 9, 52 N. E. 342; *Mulligan* v. *Snavely*, 117 Neb. 765, 223 N. W. 8; *Wattles* v. *Slater*, 154 Mich. 666, 118 N. W. 486; *Wittmeir* v. *Leonard*, 219 Ala. 314, 122 So. 330. The holdings of the foregoing cases are to the effect that, if one has knowledge of the existence of a mortgage, he is bound by its terms. The finding that the

Shell Oil Company knew of the existence of plaintiff's mortgage is, as urged by appellant, inconsistent with the finding that the Shell Oil Company did not know that the mortgage contained the covenants restricting the use of the premises. It will be noted that, if the title of the Shell Oil Company is inferior and subject to the covenants contained in plaintiff's mortgage, it must be because the Shell Oil Company had knowledge of the existence of plaintiff's mortgage prior to or at the time Mr. and Mrs. Shelton executed and delivered the deed to the Shell Oil Company. As heretofore stated in this opinion, the deed to the premises in controversy from Mr. and Mrs. Shelton to the Shell Oil Company was recorded on September 9, 1929. The mortgage from Mr. and Mrs. Shelton to the plaintiff was recorded September 14, 1929. Thus the record title to the premises indicates that the Shell Oil Company holds the premises free from plaintiff's mortgage. The only competent testimony touching the question of the knowledge or lack of knowledge that the Shell Oil Company had of plaintiff's mortgage at or prior to the time it received and placed its deed of record comes from the defendant C. A. Shelton and Le Grand Backman. Mr. Shelton testified that he did not inform the Shell Oil Company that he had given plaintiff a mortgage. He further testified that on September 3, 1929, just before he delivered the deed of conveyance to the Shell Oil Company, he exhibited to Mr. Backman the mortgage which he had given to the plaintiff. Mr. Backman testified in substance that he is an attorney at law; that he is, and on September 3, 1929, was, manager of the Intermountain Title & Guaranty Company; that on July 25, 1929, the Shell Oil Company applied to the Intermountain Title & Guaranty Company for insurance of the title to the premises in controversy, that he reported to the Shell Oil Company that there were certain defects in the title to the property which the Intermountain Title & Guaranty Company would not insure against; that on August 24, 1929, he was instructed by the Shell Oil Company to deliver to defendant C. A. Shelton a

check for $4,500 upon receipt of a deed to the property from Mr. and Mrs. Shelton; that the Shell Oil Company would waive the defects in the title; that on September 3, 1929, Mr. Shelton came to Salt Lake City to close the deal with the Shell Oil Company with respect to the Marysvale property; that at that time Mr. Shelton exhibited the mortgage in favor of the plaintiff, and asked his (Mr. Backman's) opinion as to the effect of the covenants contained in the mortgage; that he expressed an opinion to Mr. Shelton as to the legal effect of the covenant in the mortgage restricting the use of the premises; that he did not at that time report to the Shell Oil Company the fact that Mr. Shelton had given a mortgage to the plaintiff; that he examined the title to the Marysvale property for the Intermountain Title & Guaranty Company to ascertain the condition of the title for insurance purposes, and that he did not examine the condition of the title for the Shell Oil Company; that later it was discovered that the deed which was given by Mr. and Mrs. Shelton to the Shell Oil Company did not cover all of the corner lot at Marysvale; that on December 10, 1929, he reported to the Shell Oil Company the condition of the title.

It is clear that Mr. Backman knew of the existence of plaintiff's mortgage and of its contents at the time the $4,500 check was delivered to Mr. Shelton, and the deed to the Marysvale property was delivered to Mr. Backman for the Shell Oil Company. It is not so clear that Mr. Backman knew or had reason to believe, if such be ▪ the fact, that the mortgage had been delivered to the plaintiff at the time of the conversation had between him and Mr. Shelton. It is difficult to understand why Mr. Shelton, the mortgagor, should be in possession of the mortgage if it had theretofore been delivered to the mortgagee. There is, however, some evidence which tends to show that the mortgage was delivered on the date it bears, namely, August 14, 1929. But can it be said that either the Intermountain Title & Guaranty Company or Mr. Backman,

its manager, was, at the time the deed to the property and the check were delivered, such an agent of the Shell Oil Company as to bind it with notice of what Mr. Backman learned from Mr. Shelton as to plaintiff's mortgage? We are of the opinion that the question must be answered in the negative. At the time the transaction of September 3d was consummated, neither the Intermountain Title & Guaranty Company nor Mr. Backman was in the employ of the Shell Oil Company to investigate the title to the Marysvale property. Such investigation as had been made by Mr. Backman prior to September 3d was for the Intermountain Title & Guaranty Company and not for the Shell Oil Company. So far as appears, the only authority which either Mr. Backman or the Intermountain Title & Guaranty Company had to act for the Shell Oil Company on September 3, 1929, was to deliver to Mr. Shelton the $4,500 check upon receipt of the deed of conveyance. Under such circumstances, notice to Mr. Backman and the Intermountain Title & Guaranty Company of the existence of plaintiff's mortgage and of its contents was not notice to the Shell Oil Company.

"The rule that notice to an agent is notice to his principal is not applicable unless the notice has reference to business in which the agent is engaged under authority from the principal, and is pertinent to matters coming within that authority; and hence a principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, unless the agent actually communicates his information to the principal. * * * Notice to or knowledge of a mere ministerial agent, clerk, or servant will not be imputed to the principal." 2 C. J. 863-866, and cases cited in the footnotes to the text.

The delivery of the $4,500 check to Mr. Shelton upon the receipt of the deed was a mere ministerial act. There is no evidence whatsoever in the record that Mr. Backman communicated to the Shell Oil Company the information which he received from Mr. Shelton as to plaintiff's mortgage until more than three months after the transaction between Mr. Shelton and the Shell Oil Company

was consummated. The finding of the trial court that the Shell Oil Company did not know of the covenants contained in plaintiff's mortgage at the time the Marysvale property was conveyed to it is in accord with the evidence. Before the title of the Shell Oil Company can be said to be burdened with the covenants contained in plaintiff's mortgage, the plaintiff must establish the fact that the Shell Oil Company had either actual or constructive notice of plaintiff's mortgage at or before the time title to the property vested in the Shell Oil Company. Plaintiff has failed to establish that fact, and therefore the finding upon that issue was properly made against it. This conclusion is at variance with the trial court's finding that the Shell Oil Company knew of the existence of plaintiff's mortgage at the time the deed from Shelton to the Shell Oil Company was delivered. Neither plaintiff nor defendants have questioned that part of the findings. The plaintiff has not included it within its assignments of error, and the defendants have not filed any cross-assignments. As a general rule, an appellate court is precluded from reviewing or interfering with a finding of fact,[1] in the absence of an assignment of error directing its attention to such finding. In the instant case, we are confronted with the somewhat anomalous situation of an unsuccessful attack being made upon a finding which is at variance with another finding that is not questioned by either party. In an equity case, this court is authorized to review both questions of law and of fact. Appellant by its assignments of error has invoked the jurisdiction of this court to review the evidence touching the nature and extent of the knowledge, actual and constructive, which the Shell Oil Company had of plaintiff's mortgage at the time Mr. Shelton conveyed the premises in controversy. Having reached the conclusion upon this record that the court below properly found that at the time the property was conveyed to the Shell Oil Company it had no knowledge of the covenants contained in plaintiff's mortgage restricting the use of the property, it must follow that any finding inconsistent with

the finding thus approved must give way to the finding which is in accord wth the evidence. In a suit in equity, where findings are inconsistent with each other, and one of such findings is supported by the evidence, and the other finds no support in the evidence, the latter finding will be set aside. *Sandberg* v. *Victor Gold & Silver Mining Co.*, 24 Utah 1, 66 P. 360. The finding that the Shell Oil Company knew of the existence of plaintiff's mortgage on September 3, 1929, when the deed from Mr. and Mrs. Shelton was delivered to the Shell Oil Company, is disapproved and set aside. Plaintiff having failed to show that the Shell Oil Company had either actual or constructive knowledge of plaintiff's mortgage at the time the property was conveyed, it follows that the title acquired by the Shell Oil Company is superior to plaintiff's right to have the covenants contained in its mortgage enforced, and therefore plaintiff is not entitled to the reformation of its mortgage or to injunctive relief as against the Shell Oil Company.

Plaintiff has numerous other assignments of error, some of which are meritorious, but it would serve no useful purpose to discuss the other assignments. The results of this litigation cannot be changed, even though plaintiff should prevail as to its other assignments. The fact that the title of the Shell Oil Company is superior to the covenants contained in plaintiff's mortgage is controlling, and requires an affirmance of the judgment appealed from. There is, however, one other matter which should be noted before concluding this opinion. Counsel for appellant at the time of the oral argument seemed to attach considerable importance to the fact that at the time of the trial the title of the Marysvale property was vested in defendant C. A. Shelton. An abstract of title to the property was received in evidence. It shows that on June 12, 1930, the Shell Oil Company conveyed the property to C. A. Shelton. The deed was placed on record July 1, 1930. On June 18, 1930, defendants C. A. Shelton and Ada Shelton, his wife, as mortgagors, executed a mortgage upon the premises in the

sum of $4,350 in favor of the Shell Oil Company as mortgagee. The mortgage was placed of record on July 1, 1930. This suit was begun on January 31, 1930. Plaintiff did not file any supplementary complaint. The record is silent as to whether or not the mortgage to the Shell Oil Company contains any covenants in its favor restricting the use of the premises. It will be noted that the transactions had between the Shell Oil Company and Mr. Shelton above mentioned were subsequent to the commencement of this suit, and therefore such transactions were not open to judicial inquiry, in the absence of plaintiff filing a supplementary complaint. Any change in the relation of Mr. Shelton and the Shell Oil Company with respect to the land in controversy after the bringing of this suit is not made an issue by the pleadings. Therefore the rights of the parties must be determined from the facts as they existed prior to and at the time this suit was begun. Thus viewing the facts, it may well be that plaintiff has just cause to complain against the defendant C. A. Shelton, but the relief which plaintiff here seeks against the defendants Sheltons cannot be granted because of the superior rights which the Shell Oil Company has in the premises here involved.

It follows that the judgment appealed from should be, and it accordingly is, affirmed. The Shell Oil Company is awarded its costs. No costs are awarded the defendant C. A. Shelton.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.