FEDERAL LAND BANK OF BERKELEY v. SALT LAKE VALLEY SAND & GRAVEL CO. et al.

No. 5997. Decided January 3, 1939. (85 Pac. 2d 791.)

*R. W. Young*, of Oakland, Cal., and *Richards & Mitchell*, of Salt Lake City, for appellant.

*Irvine, Skeen & Thurman* and *A. U. Miner*, all of Salt Lake City, for respondents.

MOFFAT, Justice.

This is an action in equity seeking that a release of mortgage "be cancelled or annulled" as to a tract of 15.63 acres of land out of a total of something over 800 acres included in the original mortgage and the release thereof.

The trial court denied plaintiff Bank relief and dismissed its complaint on the merits. In addition to cancellation and annulment of the release of mortgage plaintiff also prayed that the release be reformed, which by necessary consequence required a reformation of the mortgage so as to make it applicable only to the 15.63 acre tract and for foreclosure of the mortgage as thus reformed.

There appears to be no dispute as to the controlling facts notwithstanding some conflict of evidence on incidental issues.

This being an equity case we are required to examine the evidence and determine the facts for ourselves. It has sometimes been stated that the review of an equity case under

our constitution and laws is a trial de novo upon the record. In equity cases the review in this court "in effect is a trial de novo on the record," *Jensen* v. *Howell,* 75 Utah 64, 282 P. 1034, 1038. In an equity case, this court is authorized to review both questions of law and of fact." *Independent Oil & Gas Co.* v. *Shelton et al.,* 79 Utah 384, 6 P. 2d 1027, 1032. There being no substantial conflict in the evidence except as above noted, we state the facts substantially as counsel themselves have stated them.

On March 1, 1922, Heber Bennion, Jr., and his wife obtained a loan from Appellant, hereinafter referred to as the "Bank," in the sum of $5,500 and to secure payment executed and delivered to the Bank a mortgage covering approximately 850 acres of land in Salt Lake County, Utah. The mortgagors on February 28, 1923, conveyed all of the land covered by the mortgage to the Provo Reservoir Company, hereinafter referred to as the Reservoir Company. The conveyance was made subject to the mortgage.

On the 28th day of March, 1929, the Company by quitclaim deed conveyed to William H. Haigh the 15.63 acres in question. The company in the quitclaim deed agreed "to pay all installments on a mortgage covering the land" conveyed held by the Bank as they became due. On March 22, 1929, Haigh and wife conveyed by warranty deed, excepting the mortgage from the warranties to Frank M. Maher and J. J. Stewart, Jr., and on May 8, 1929, Maher and Stewart and their wives conveyed by warranty deed to the Sand and Gravel Company, hereinafter referred to as the Gravel Company, the tract excepting the mortgage to the Bank from the warranties. Of these grantees the Reservoir Company is the only one who assumed or agreed to pay the mortgage. All however recognized the existence of the mortgage to the Bank.

Default occurred in payment of principal, interest and advancements for assessments, etc., and on October 10, 1933, the Bank wrote to the Reservoir Company as to payment. On October 28, 1933, the Reservoir Company indi-

cated to the Bank that "it is quite impossible" to pay the delinquencies and offered to deed their "equity in the property" to the Bank.

The Bank then transmitted abstracts covering the property to a licensed abstracter for continuation. The abstract and certificate thereto showed title in the Reservoir Company subject to the mortgage and taxes. No reference was made or shown as to the conveyances of the 15.63 acres out of the original acreage described in the original mortgage.

The Bank then sent a warranty deed to the Reservoir Company covering the property as described in the mortgage, which was executed and returned by the Reservoir Company and recorded by the Bank. All of the conveyances were duly and about the time of execution recorded.

After the Bank received the deed from the Reservoir Company the note was cancelled and returned to the Reservoir Company and the release of mortgage was sent to the abstracter with instructions to record it if the title to the property remained subject only to the mortgage and taxes. The abstracter recorded the release.

The record discloses that about July, 1934, the Bank was advised by the County Recorder's office of Salt Lake County that upon checking certain redemption tax certificates that the receipts did not include the 15.63 acre tract and that the Bank was advised of the conveyances on record relating thereto. The Bank then wrote to the Reservoir Company and the abstracter calling attention to what, to the Bank, was a mistake and requesting explanations.

On September 28, 1935, the Bank conveyed approximately 53 acres of the property by warranty deed to Charles E. and Geneve C. Mercer, and on March 4, 1936, entered into a written agreement to sell to Heber A. Smith the balance of the property excepting the 15.63 acre tract.

This action was instituted on May 5, 1936, for the purposes indicated.

The errors assigned by appellant Bank, have been grouped into two subdivisions:

The second subdivision relates to the admission of testimony. Such testimony as is complained of in this regard relates to the value of the 15.63 acres, former ownership thereof, and that the evidence was immaterial. ■ Counsel states "that while such testimony is valueless for any purpose, it has no place whatever in this proceeding." The cause was tried to the court. It is presumed in equity cases tried to the court that the court disregard incompetent, immaterial, or "valueless" evidence. *Salt Lake Foundry & Machine Co.* v. *Mammoth Min. Co.*, 6 Utah 351, 23 P. 760, decree affirmed 151 U. S. 447, 14 S. Ct. 384, 38 L. Ed. 229.

The first situation may be stated in the nature of a conclusion: Was the court justified in concluding that the Bank was not entitled to the relief prayed?

Specifically it is prayed that the release be cancelled and annulled as to the 15.63 acres of land, or that the release be reformed so that the effect of it will be to release all of the security covered by the mortgage except the 15.63 acres of land. Foreclosure is also asked.

It is apparent that Appellant's prayer is not for a rescission of the release claimed to have been by mistake of fact executed and recorded, but that Appellant seeks a reformation of the release, a reformation of the mortgage and possibly a revival of the debt obligation evidenced by the note the mortgage was executed to secure. The Gravel Company was not a party to any of these contracts.

We are of the opinion the trial court reached the correct result. There may be some inconsistencies and troubles to harmonize the findings and conclusions ■ reached. In an equity case a correct result will be supported even though erroneous reasons were given therefor.

Briefly, however, though defendant, Gravel Company, was not a party to the release nor consulted about it, and although there appears to have been no actual notice of the

conveyance of the 15.63 acres, the Bank had constructive notice because the conveyances had been recorded and the Gravel Company in possession for years. The Reservoir Company who made the conveyance had actual knowledge. The most that can be said for the situation as between the Bank and the Reservoir Company who had assumed and agreed to pay the mortgage is that there was but a partial failure of consideration. The Gravel Company was not a party to the release nor to the mortgage but had taken a part of the land subject to the mortgage. Its status was changed when the release was recorded. The Bank after actual notice of the alleged error and actual notice of the conveyances of the 15.63 acres conveyed a part and contracted to convey the balance except the 15.63 acres thus changing the status of not only itself but of all parties from the original mortgagors down to the last grantee or contractee. To grant what the Bank asks raises a multitude of problems equitable and otherwise and would result in the reviving of liabilities that would affect all parties from the original mortgagors to and through all those who were parties to the various contracts and conveyances shown to have been made since the execution of the original note and mortgage.

Judgment affirmed, costs to respondent.

FOLLAND, C. J., and LARSON, J., concur.

WOLFE, Justice.

I concur in the results. The opinion of Mr. Justice MOFFAT does not consider a number of the points urged by the parties and necessary to the decision of the case. As hereinafter pointed out, I think the solution depends on whether the defendant has the right to urge the defense of ratification of the release of the whole mortgage by the sale of the Mercers et al., with knowledge of the mistake, when said defendant was never a party to the original transaction in regard to which ratification might be claimed.

Furthermore, I think the constructive notice which the record would ordinarily give to the Bank cannot in this case be urged because the Bank did show diligence in engaging an abstractor and the defendant cannot be said to have changed his position by reason of the Bank's transactions with the Reservoir Company. In *Martin* v. *Hickenlooper*, 90 Utah 150, 59 P. 2d 1139, we considered the authorities which more and more show a development toward not permitting a windfall to one person because of the mere negligence of another where he has not been injured by the negligence. It requires gross negligence before another may fortuitously and vicariously benefit by that negligence. But in this case it is not shown that the bank was negligent. If the abstractor was negligent and if the abstractor may be considered as the agent of the bank, the negligence of the agent cannot be imputed to the principal for the sake of benefiting a third party. The doctrine of imputed negligence is to give one injured by the acts of a servant or agent acting in the business of the master the right to recover against the superior for damages suffered. It cannot be invoked in order to give someone not injured a windfall or benefit he did not expect and would not have had but for the negligence of the agent. Furthermore, whether negligent or not, the Bank must lose here for other reasons.

I do not think it necessary to determine whether the action here sought is for reformation or rescission. I hardly think, in any case, it can be reformation because it is not shown that there was any agreement intended by the parties to which the actual agreement entered into by mistake can be reformed. Both parties intended what they did. It was only because the facts were not as they thought that the agreement as they intended was sought to be avoided. The Reservoir Company intended to convey all the land contained in its warranty deed to the Bank, including the 15.63 acres; the Bank intended, in exchange therefor, to give release to the full indebtedness. Reformation requires an agreement to which the agreement reformed may conform. What is

really sought in this case is partial rescission. Is the Bank entitled to such rescission? I think it is not entitled under the facts of this case to the rescission, and I do not think it really makes any difference in this conclusion whether the Reservoir Company had been joined with the defendant or whether cancellation had been asked for as to the whole release, rather than as to the part affecting the defendant. In what follows I shall attempt to so demonstrate.

I think the reader may better understand the analysis if taken in several steps. The first of these steps will be to consider the rights of the parties as they would have been had the Bank not sold the property to the Mercers and to Smith.

If the Bank had retained all the property, it really obtained from the Reservoir Company (the 15.63 acres omitted), it could have, after it discovered the mistake, brought a suit in equity for rescission of the *whole* release, joining the Reservoir Company and the Gravel Company in that suit. A decree cancelling the release upon the Bank's reconveying to the Reservoir Company all the property the latter had received would have been entered. This would put the parties back just where they were before the mistake.

After this the Bank would have been free to do one of three things: (a) It could have accepted all of the land really owned by the Reservoir Company and given a release of the whole debt. In such case the defendant's 15.63 acres would have been cleared; (b) it could have taken the land really owned by the Reservoir Company and credited the fair value on the whole indebtedness and foreclosed the defendant's 15.63 acres for what remained of the indebtedness. There is nothing which prevents a mortgagee from releasing one parcel of land from a mortgage and foreclosing on the other parcels so long as he only brings *one* action for the foreclosure and credits the fair market value of the parcel released. *Blood* v. *Munn,* 155 Cal. 228, 233, 100 P. 694; *Woodward* v. *Brown,* 119 Cal. 283, 294, 51 P. 2, 542, 63 Am.

St. Rep. 108; Jones on Mortgages, 8th Ed., Secs. 894, 1258; 18 California Jurisprudence, 179, 219; or (c) the Bank could have foreclosed all of the land covered by the mortgage by joining the Reservoir Company and the defendant. In such case the defendant could have redeemed his portion or all of the land covered by the mortgage. R. S. Utah, 104-37-30. The defendant could also under such foreclosure sale have required the sheriff to sell the Reservoir Company's land first because that company was liable for the debt. The defendant could have protected itself by bidding the land up at the sale to a price where the Bank would have had to pay a price beyond which no party would have redeemed. That price would be the fair market value, it being presumed no one would pay more than the fair market value.

If it were not for the sale to the Mercers and Smith, it might be urged with much force that defendant is now in exactly the same position he would have been in had the Bank done (b) above. In such case the fair market value would have been credited on the debt, and the Bank would have resorted to the defendant for the balance. And while defendant would not have as under (c) above the right to redeem the whole of the land, if it could be shown in the foreclosure suit against the defendant above that the Bank had really credited the fair value of the Reservoir Company's land on its indebtedness, it might be difficult for the defendant to show where it had been damaged. But what the situation and rights of the defendant might have been had the Bank not sold the land to the Mercers and to Smith need not be considered except to make more clear what its rights now are under the facts as they really are.

The land really owned by the Reservoir Company cannot now be returned to it in return for a cancellation of the release of the mortgage because the Bank no longer has control of it. It was conveyed away with knowledge of the fact that the defendant had title to 15.63 acres. We pause a moment to consider this last statement. Finding No. 8 of the lower court held that the Bank did not have actual knowledge of

the fact that the Reservoir Company had conveyed the 15.63 acres at the time it sold "partially under contract of sale and partially through warranty deed all of the said property at the full value thereof *except the said 15.63 acres.*" (Italics added.) We think the inevitable inference from the finding to be that at the time the Bank did sell under contract and warranty deed, all except 15.63 acres, it must have had actual notice that it did not own said 15.63 acres. It would be too much to suppose that just by coincidence the Bank sold all except 15.63 acres. The inference is impelling that the reason it did not sell that small parcel was because it had actual knowledge of the fact that it did not own that parcel. Hence the Finding No. 8 of the court must be construed to mean what its inevitable inference would make it mean, which is contrary to the other statement in the finding that the Bank did not have actual knowledge that the defendant had acquired the 15.63 acres. I hardly think it requires a cross assignment of error by the defendant to attack this finding. The finding stands attacked on its face as being consistent only with actual knowledge.

Having, therefore, concluded that the findings actually show that the Bank did have actual knowledge of the fact that the Reservoir Company had conveyed 15.63 acres to other parties before it made a conveyance to the Bank and that in view of that knowledge the Bank nevertheless conveyed partially under contract and partially under deed the land really conveyed by the Reservoir Company to Mercers and to Smith (a fact borne out by the letters in the evidence), we now proceed to determine what the rights of defendant are under such knowledge. Defendant's rights may be clearly comprehended by first determining what the rights of the Reservoir Company would be under such situation. The Reservoir Company in an action to rescind could undoubtedly have defended on the ground that by the Bank's action in selling the land with knowledge of the mistake, it chose to and did ratify the release of the mortgage of *all* the land in exchange for a conveyance of all the land, less

the 15.63 acres. Can the defendant who was not a party to the original transaction between the Reservoir Company and the Bank also plead such ratification as a defense against this suit? I think it can. In the first place, if the Reservoir Company could have pleaded it in a suit to rescind brought by the Bank, in which the defendant would also have been a party, the defendant in that suit might have compelled the Reservoir Company to plead it, because the Reservoir Company was under duty to pay off the whole debt which would have released the defendant's property. The defendant, therefore, in such suit could have compelled the Reservoir Company its co-defendant to plead ratification or pleaded that defense itself.

If either could have been done, the defendant cannot now be put in a worse position than it would have been had a suit for rescission against it and the Reservoir Company been brought by the Bank. Hence, it may now plead the ratification as a defense, since it would otherwise be prejudiced by the fact that the plaintiff Bank had not joined the Reservoir Company and brought an action to rescind the release of the whole mortgage.

For the above reasons I think the district court was correct in dismissing the suit against the plaintiff, although no reasons were given by it and although it seems to have intended to find every fact in favor of the Bank. And for the reasons stated in this opinion I concur in the results of the opinion of Mr. Justice MOFFAT.